**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| LA MOLISANA S.p.A., | ) |
| Plaintiff, | ) |
| and | ) |
| VALDIGRANO DI FLAVIO PAGANI S.R.L., | ) |
| Consolidated Plaintiff, | ) |
| v. | )    Consol. Court No. 21-00291 |
| UNITED STATES, | ) |
| Defendant. | ) |

**ORDER**

Upon consideration of the Department of Commerce's final remand redetermination, the parties' comments, and all other pertinent papers, it is hereby

**ORDERED** that the remand redetermination is sustained, and it is further

**ORDERED** that judgment is entered in favor of the United States

Dated: _____, 2026          _____
New York, NY                                                    SENIOR JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| LA MOLISANA S.p.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| VALDIGRANO DI FLAVIO PAGANI S.R.L., ) | |
| ) | |
| Consolidated Plaintiff, ) | |
| v. ) | Consol. Court No. 21-00291 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S COMMENTS IN SUPPORT
OF REMAND REDETERMINIATION**

Defendant, the United States, respectfully submits this response to the comments

submitted by plaintiff La Molisana, S.p.A. (La Molisana), ECF No. 63, concerning the

Department of Commerce's (Commerce) final remand redetermination filed pursuant to this

Court's remand order in *La Molisana S.p.A. v United States*, Consol. Court No. 21-00291 (Ct.

Int'l Trade August 4, 2025) (Remand Order), ECF No. 53.  *See* Final Results of Redetermination

Pursuant to Court Remand (Remand Results) (P.R.R. 19)[1], ECF No. 61.   Because Commerce's

remand redetermination complies with the remand order, as well as the decision issued by the

Court of Appeals for the Federal Circuit in *La Molisana S.p.A. v. United States*, 138 F.4th 1353

(Fed. Cir. 2025), and is also supported by substantial evidence, the Court should sustain and

---

[1]  "P.R. _" is a citation to the public record of the underlying administrative review record, and "C.R._" is a citation to the confidential version of the underlying record.  "P.R.R." is a citation to the public record of the remand redetermination.  "C.R.R." is a citation to the confidential version of the record of the remand redetermination.

enter judgment in favor of the United States.

## BACKGROUND

In September 2019, Commerce initiated the 23rd administrative review of the antidumping duty order covering certain pasta from Italy. *See Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 84 Fed. Reg. 47,242 (Dep't Commerce Sept. 9, 2019). Commerce selected La Molisana as a mandatory respondent. *See Certain Pasta from Italy*, 86 Fed. Reg. 28,336 (Dep't of Commerce May 26, 2021) (final results), and accompanying Issues and Decision Memorandum (IDM) (P.R. 277). To compare foreign and domestic sales of pasta with "identical physical characteristics," Commerce requested that respondents code pasta with a protein content of 12.5 percent or higher as "premium" and pasta with a protein content of less than 12.5 percent as "standard," stating that respondents should rely on the label of the product in identifying protein content. Initial Questionnaire at Sections B and C; *see also* 19 U.S.C. § 1677(16)(A).

Before this Court, La Molisana argued that Commerce should be required to adjust its model-matching methodology with regard to protein content coding. Relevant to the current issue, La Molisana claimed that Food and Drug Administration (FDA) rounding requirements for nutritional labels rendered its protein content reporting inaccurate because differences between the United States and Italy in measuring nitrogen content—an element of calculating protein content—resulted in comparisons between physically dissimilar products. *See* La Molisana Br. at 12-13, ECF No. 27-1. The Court sustained Commerce's final results. *See La Molisana S.p.A. v. United States*, 633 F. Supp. 3d 1266 (Ct. Int'l Trade 2023).

La Molisana appealed to the Federal Circuit, which affirmed this Court's judgment in certain respects but held that Commerce's reliance on nutritional labels for determining protein

content resulted in an inaccurate comparison between the foreign and domestic product due to the FDA's rounding requirements for nutritional labels and the differing standards between the United States and Italy for calculating protein content based on nitrogen measurement. *La Molisana*, 138 F.4th at 1359-62. Accordingly, the Federal Circuit vacated in part and remanded the rounding and nitrogen measurement issues back to this Court for Commerce to adjust its comparison of foreign and domestic pastas to ensure that the compared products are "identical in physical characteristics" pursuant to 19 U.S.C. § 1677(16)(A). *Id*.

On remand, and pursuant to the Federal Circuit's decision, Commerce found that its protein coding method needed modification to match La Molisana's sales of the foreign like product to the sales of subject merchandise. Remand Results at 5. Commerce thus issued supplemental questionnaires to La Molisana to obtain information to calculate protein content. *See generally* Remand Supp. Questionnaires (P.R.R. 1, 9, 11). La Molisana responded, reporting three sets of protein content data for pasta in both the Italian and U.S. market databases: (1) actual protein content measured in grams; (2) protein content based on nitrogen content using the Italian conversion factor; and (3) protein content based on nitrogen content using the U.S. conversion factor. La Molisana 1st Supp. Resp. at 5-6, 3-7 (P.R.R. 8), Market Sales Databases (C.R.R. 3-4); *see also* Draft Results of Redetermination Pursuant to Court Remand (P.R.R. 16). La Molisana also stated that it "has no business purpose to know or record the nitrogen content of its products" and that it "derived the nitrogen content for this response by using the reported protein content." La Molisana 1st Supp. Resp. at 3-4 (P.R.R. 8). Finally, La Molisana submitted revised cost of production databases reflecting protein content based on the actual amount of protein measured in grams. La Molisana 2nd Supp. Resp. at Exh. R2-1 (C.R.R. 7); La Molisana 3rd Supp. Resp. at Exh. LMR3-1 (C.R.R. 9). Commerce preliminarily found that, of the three

reported protein content datasets, the one measuring protein content in grams would be the most reasonable way to calculate protein content because it is the only data that La Molisana records in the ordinary course of business and is based on actual protein content.  Draft Remand Results at 8.

In its comments on the draft remand redetermination, La Molisana asserted that Commerce's protein content methodology remained deficient, alleging that the actual protein content data is "meaningless because it does not recognize the nitrogen content" and that it was unclear whether the "make-up of the 'gram'" is based on the Italian or American standard.  La Molisana Draft Remand Comments at 2 (P.R.R. 18).  La Molisana also claimed that Commerce had applied a "new and different standard" for differential pricing,[2] rather than the Cohen's *d* test used in the final results, and argued that "{t}his new standard should be rejected."  *Id.* at 3.

In the final remand results, Commerce continued to rely on actual protein content, observing that "La Molisana explained that the protein content recorded in its books and records is {in} the 'Italian Standard.'"  Remand Results at 12.  Commerce also disagreed that nitrogen content is "highly relevant," explaining that La Molisana had reported that it "has no business purpose to know or record the nitrogen content of its products" and that, in any event, La Molisana calculated its reported nitrogen content based on actual protein content.  *Id.* at 11 (citing La Molisana Questionnaire Response at 3-4).  Commerce found that, even without relying on the nutritional label on the pasta packaging and instead relying on actual protein content, the weighted-average dumping margin was unaffected.  *Id.* at 10.

---

[2]  Although Commerce has developed a new differential pricing methodology in light of the Federal Circuit's rejection of the Cohen's *d* test in *Marmen Inc. v. United States*, 134 F.4th 1334 (Fed. Cir. 2025), Commerce did not use that new methodology in this case, and doing so would have been outside the scope of the remand order.

With respect to differential pricing, Commerce explained that—despite La Molisana's claim to the contrary—Commerce had in fact used the Cohen's *d* test in both the draft and final remand redeterminations, consistent with La Molisana's request. *Id.* at 13.  Commerce thus determined that La Molisana's arguments regarding the differential pricing analysis were moot. *Id.*

**ARGUMENT**

## I.      Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002).  Accordingly, the Court will sustain Commerce's redeterminations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## II.     Commerce's Reliance on The Actual Protein Content Reported by La Molisana Is Reasonable And Complies with The Federal Circuit's Decision

In compliance with the Federal Circuit's decision, Commerce did not rely on nutritional label information for protein content and instead used La Molisana's own calculations of actual protein content, measured in grams, for the product characteristic reflecting protein content. Remand Results at 7-8.  In doing so, Commerce distinguished premium and standard quality pasta by relying on actual protein data for both foreign and domestic market sales, explaining that, because La Molisana "consistently applied {the actual protein content calculation} in both the comparison and U.S. markets," Commerce's dumping margin calculations "compares

5

identical products sold in the comparison and U.S. markets." *Id.* at 7. Commerce thereby compared pasta sold in the foreign and domestic markets with identical physical characteristics, as required by 19 U.S.C. § 1677(16)(A). *La Molisana*, 138 F.4th at 1359. Commerce additionally observed that relying on actual protein content constitutes the most reasonable methodology because La Molisana "records the actual protein content for each product line or brand sold in the comparison and U.S. markets" but does not determine or record nitrogen content in the ordinary course of business, and the other methods of reporting protein content rely on nitrogen content calculations. *Id.* at 6, 8. Finally, Commerce explained that using actual protein content is the only methodology "for which the record contains methodologically consistent sales and {cost of production} data in both the comparison and U.S. markets." *Id.* at 8. Commerce's determination thus complies with the Federal Circuit's directive to compare pasta sold in the domestic and foreign markets with identical physical characteristics and is supported by substantial evidence.

La Molisana argues that the remand redetermination does not address whether the 12.5 percent threshold is based on the Italian or U.S. standard "as to what constitutes a gram of protein" and that percentage is tied to nitrogen content. La Molisana Comments at 3. But as Commerce explained, La Molisana reported the protein content by grams of protein per kilogram of pasta based on the *Italian standard* for pasta sold in both the United States and Italy. Remand Results at 11-12 (citing La Molisana 1st Supp. Resp. at 3-5). As such, La Molisana's contention that Commerce did not address whether Commerce used the Italian or the U.S. standard is simply incorrect. Commerce consistently distinguished premium and standard quality pasta sold by La Molisana in the United States and Italy based on the Italian standard for determining protein content, as measured in grams. *Id.* at 11-12.

6

Interestingly, by arguing that Commerce made a "fundamental error" in allegedly failing to "identify the standard for protein test," La Molisana seems to question the reliability of its own reported data, given its statement that "the question is whether the data recorded by La Molisana reflects the actual physical make-up." La Molisana Comments at 5. But La Molisana's argument against reliance on its own reporting is baseless and not grounded by any evidence of inaccuracies—Commerce had no reason to question the reliability of La Molisana's reported data.

With regard to nitrogen content, La Molisana admitted that it "has no business purpose to know or record the nitrogen content of its products{,}" and stated that it "determines its products' protein content based on independent laboratory testing that 'only reports the grams of protein.'" [3] *Id.* at 11. In light of these factors, Commerce reasonably determined that nitrogen content is not a particularly relevant consideration and that the method of relying on actual protein content is the only one "for which the record contains methodologically consistent sales and {cost of production} data" across both markets. *Id.* at 8, 11.

Because Commerce's reliance on actual protein content—based on La Molisana's own data and using Italian standards reported to Commerce—complies with section 1677(16)(A) and the Federal Circuit's decision and is supported by substantial evidence, the court should sustain Commerce's determination.

---

[3] La Molisana claims that, "{w}ithout a reference to the nitrogen content standard, the number of grams recorded by itself is not relevant as one gram of protein is not necessarily comparable to another gram of protein." La Molisana Comments at 5. But given that La Molisana consistently recorded its data across the two markets using Italian standards, this argument has no merit.

7

**III.    Commerce Correctly Declined to Alter Its Differential Pricing Analysis Methodology Because The Issue Is Outside The Scope of The Remand Order**

In a complete about-face from its position in its comments on the draft remand redetermination, in which it claimed that Commerce should *not* use a "new and different standard" other than the Cohen's *d* test,[4] La Molisana Draft Remand Comments at 3, La Molisana now argues that Commerce should not apply the Cohen's *d* test *or* the new differential pricing methodology. *See* La Molisana Comments at 6. But no party contested Commerce's differential pricing analysis in this litigation; accordingly, neither this Court nor the Federal Circuit ruled on the issue during the litigation. And the Court should decline to consider the issue now.

As the Court has held, in redeterminations pursuant to remand, "Commerce may only address issues specified in a remand order." *Hussey Copper, Ltd. v. United States*, 960 F. Supp 315, 318 (Ct. Int'l Trade 1997). As such, Commerce may not adopt a change in methodology not previously requested by the parties because it should not reconsider issues that have not been previously challenged by parties during the litigation or otherwise remanded. *See id.*; *see also Outokumpu Copper Strip, B.V. v. United States*, 15 F. Supp. 2d 806, 807 (Ct. Int'l Trade 1998). Because no challenge to Commerce's differential pricing analysis was raised during the litigation, the issue falls outside the scope of the remand order; Commerce thus properly limited its analysis to the topics addressed in the Federal Circuit's decision and the remand order. *Cf. Zhaoqing Tifo New Fibre Co. v. United States*, 256 F. Supp. 3d 1214, 1337 (Ct. Int'l Trade 2017) (remanding again to Commerce because it had exceeded the scope of the remand).

---

[4] La Molisana now contends that in its comments on the draft remand redetermination, it "also . . . objected to the use of Cohen's D," La Molisana Comments at 6, but an examination of its comments demonstrates that this is not the case.

By failing to advocate for a change in Commerce's differential pricing methodology before this Court, La Molisana has waived any argument that Commerce should have modified its differential pricing methodology on remand.  *See Hylete LLC v. Hybrid Athletics*, *LLC*, 931 F.3d 1170, 1174-75 (Fed. Cir. 2019).  La Molisana has similarly failed to exhaust its administrative remedies, arguing *not* that Commerce should stop applying the Cohen's *d* test but instead urging it not to use its new methodology.[5]  *See Ceramark Tech., Inc. v. United States*, 61 F. Supp. 3d 1371, 1376-77 (Ct. Int'l Trade 2015) (citing *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Circ. 2007) and rejecting the plaintiff's argument because plaintiff failed to exhaust administrative remedies by not raising the argument during the remand proceeding).

Although certain narrow exceptions to the doctrines of waiver and exhaustion exist; *see, e.g., Hylete*, 931 F.3d at 1174; *Qingdao Ge Rui Da Rubber Co., Ltd. v. United States*, 664 F. Supp. 3d 1369, 1375 (Ct. Int'l Trade 2023; none of them apply here.  Most relevant to this case, the exceptions to waiver and exhaustion concerning a change in jurisprudence or intervening judicial decision do not apply because *Marmen* was released not only well prior to La Molisana's comments on the draft remand redetermination, but also prior to this Court's remand order.  *See Gerber Food (Yunnan) Co. v. United States*, 601 F. Supp. 2d 1370, 1380 (Ct. Int'l Trade 2009) (explaining that the intervening judicial decision exception applies when the intervening decision was issued after the decision pending appeal).  The issue also does not constitute a pure question of law because La Molisana's argument would require further agency involvement, including the consideration of La Molisana's pricing data and which methodology to apply.  *Zhongce Rubber*

---

[5]  Although La Molisana did, in its case brief, argue that—on the facts of the underlying review—Commerce should not use the Cohen's *d* test, it did not allege that the Cohen's *d* test was *per se* unreasonable or unlawful.  La Molisana Case Br. at 14-15 (P.R. 259).  And in any event, La Molisana did not previously contest use of the Cohen's *d* test in any manner before this Court or the Court of Appeals.

*Grp. Co. v. United States*, 352 F. Supp. 3d 1276, 1279 (Ct. Int'l Trade 2018) (explaining that the

pure law exception applies in cases where no further agency involvement is needed).

Because La Molisana's argument contesting the use of the Cohen's *d* test is outside the

scope of this remand (and is waived and not exhausted), Commerce properly continued to rely on

it in the final remand redetermination.  The Court should not consider the argument at this late

stage.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand

results and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, Jr.
Assistant Director

OF COUNSEL:
CHARLIE CHUNG
Attorney
Department of Commerce
Office of the Chief Counsel
for Trade Enforcement & Compliance

/s/Sosun Bae
SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 305-7568
Email: sosun.bae@usdoj.gov

April 22, 2026

Attorneys for Defendant

10